Vinay V. Joshi (Calif. Bar No. 213487)
vjoshi@thepatentattorneys.com
Anthony S. Kim (Calif. Bar No. 225703)
akim@thepatentattorneys.com
Amin Turocy & Watson LLP
160 West Santa Clara Street
Suite 975
San Jose CA 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

Counsel for Petitioner
International Petroleum Products and Additives Company, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERNATIONAL PETROLEUM PRODUCTS AND ADDITIVES COMPANY, INC., <br><br> Petitioner, <br><br> v. <br><br> BLACK GOLD S.A.R.L., <br><br> Respondent. | Case No. TBD <br><br> **PETITION TO CONFIRM ARBITRAL AWARD AND ENTER JUDGMENT THEREON** <br><br> [Filed concurrently with (1) Notice of Motion and Motion to Confirm Arbitral Award and Enter Judgment Thereon; (2) Declaration of Vinay Joshi in Support of Petition and Motion to Confirm; (3) [Proposed] Order Granting Motion to Confirm; (4) Fed. R. Civ. P. 7.1 Notice of Interested Parties; and (5) Civil L.R. 3-15 Certification of Interested Parties] |

International Petroleum Products and Additives Company, Inc. ("IPAC") hereby petitions this court pursuant to 9 U.S.C. section 9 for an order confirming an arbitral award ("Arbitral Award") from the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA") in favor of IPAC and against Respondent Black Gold S.A.R.L. ("Black Gold"), AAA Case No. 01-18-0001-9728, and requests that the Court enter judgment thereon.

The Petition is made on the following grounds:

# THE PARTIES

1. IPAC is a California corporation with its principal place of business at 7600 Dublin Boulevard # 240, Dublin, CA 94568. IPAC has been a leader in the petrochemical additive marketplace for over ten years. Broadly, an additive is a mixture of chemical compounds that is intended to be combined with a petroleum product. The resulting finished product, *e.g.*, engine motor oil, is a mixture of additive and petroleum product that has one or more characteristics conferred on it by the additive, such as thermal/oxidative stability, rust protection, protection from deposit building, viscosity, wear, pitting, spalling, scoring, rust, corrosion, foaming, and demulsibility. IPAC's products include additives for industrial, driveline (transmission), crankcase (engine), grease, and fuel applications. Since its founding, IPAC has been rooted in delivering quality additives to customers and providing them with sound and cost-effective options to solve problems. To do this, IPAC employs a team of research and development chemists who continue to build the IPAC family of products, develop new products to meet the ever-changing needs of IPAC's customers, and strengthen IPAC's manufacturing capabilities. All IPAC products are subjected to stringent laboratory testing for the latest requirements and specifications.

2. Black Gold is a Monegasque limited liability company with its principal place of business at 6, Lacets Saint-Léon, in the Principality of Monaco. On information and belief, Black Gold is a seller and distributor of petroleum products and additives. Black Gold's sole shareholders are a married couple, Lorenzo and Sofia Napoleoni ("Lorenzo" and "Sofia", respectively), both of whom are citizens of Italy and residents of Monaco. Other than Lorenzo and Sofia, Black Gold has no employees, officers, directors, or other persons with an ownership or beneficial interest in Black Gold.

# JURISIDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1331 because this action arises at least in part under the Federal Arbitration Act, 9 U.S.C. section 9.

1  4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332 because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. The Court has personal jurisdiction over Black Gold because Black Gold is a party to agreements containing an arbitration clause providing for arbitration of disputes in San Francisco, California.  In addition, personal jurisdiction over Black Gold is appropriate pursuant to the California Long Arm Statute, California Code of Civil Procedure section 410.10, because Black Gold has directed activities toward IPAC in California, resulting in injury to IPAC within California.

6. Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391 and 9 U.S.C. section 9 because the arbitration was held in San Francisco and the Arbitral Award was made in San Francisco.  Moreover, venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE AGREEMENTS TO ARBITRATE

7. IPAC entered into two separate agreements with Black Gold concerning IPAC's additives business.  Under those agreements, Black Gold had two roles: sales representative and distributor.

8. Pursuant to a Sales Representative Agreement effective January 1, 2016 ("Sales Representative Agreement"), Black Gold acted as a sales representative on behalf of Black Gold. Under the Sales Representative Agreement, Black Gold received a percentage commission on sales. The Sales Representative Agreement provided that certain customers would be exclusive to Black Gold, provided that Black Gold met certain agreed-upon sales targets (also known as "budget" or "sales budget"), as set forth in Schedule B.  The Sales Representative Agreement had an initial term of three years, with automatic renewal for additional three year periods, pursuant to Section 5. However, failure to meet sales budget or to agree upon a sales budget for the next year would constitute cause for termination, pursuant to Section 6.  Pursuant to Section 15, during the term of the Sales Representative Agreement, Black Gold agreed not to sell any products that compete with

IPAC's, with the exception of polymer products.  Black Gold also agreed to keep IPAC information confidential, pursuant to Section 12.  Upon termination, Black Gold was obliged to return IPAC information to IPAC, and to maintain the confidentiality of IPAC confidential information, pursuant to Sections 8 and 12.  A true and correct copy of the Sales Agreement is attached as Exhibit 1 to the Declaration of Vinay Joshi ("Joshi Declaration").

9. Section 19 of the Sales Representative Agreement contains the following arbitration provision:

> <u>Arbitration</u>. Any dispute or controversy between the parties arising out of or relating to this Agreement, including without limitation, a dispute or controversy relating to the construction of any provision or the validity or enforceability of any term or condition (including this Section 18 [sic]) or of the entire Agreement, or any claim that all or any part of this Agreement (including this provision) is void or voidable, shall be submitted to arbitration before a single arbitrator in accordance with the Commercial Rules of Arbitration of the American Arbitration Association then in effect, at an office of or designated by the American Arbitration Association in the City of San Francisco, California. Each party shall bear its costs in any such proceeding. The decision of the arbitrator shall be final and binding upon the parties and may be enforced in any court of competent jurisdiction. To the fullest extent permitted by law, the parties irrevocably submit to the jurisdiction of such forum and waive any objection it may have to either the jurisdiction or venue of such forum.

10. Pursuant to an Exclusive Distributor Agreement effective January 1, 2016 ("Exclusive Distributor Agreement"), Black Gold also acted as a distributor of IPAC products. The Exclusive Distributor Agreement allowed Black Gold to purchase IPAC's products for resale (with markup) to downstream customers.  Those distribution customers placed their orders with Black Gold, and IPAC did not have any visibility into Black Gold's distribution activities.  The Exclusive Distributor Agreement had an initial term of one year, with provision for renewal, pursuant to Section XV.  Pursuant to Section VIII, Black Gold agreed not to render service to any other business directly competitive with the business of IPAC, and to maintain the confidentiality of IPAC confidential information.  As with the Sales Representative Agreement, the Exclusive Distributor Agreement provided for certain customer accounts to remain exclusive, provided that Black Gold meet annual sales budget, as set forth in Schedule B.  Upon termination the Exclusive Distributor Agreement, at Section XV.C, provides that Black Gold shall surrender and return all materials to IPAC, and to take reasonable steps to transfer a viable business to IPAC with respect to

4

Black Gold's distribution customers. A true and correct copy of the Exclusive Distributor Agreement is attached as Exhibit 2 to the Joshi Declaration.

11. Section XVI.E of the Exclusive Distributor Agreement contains the following arbitration provision:

> Disputes. Any controversy or claim arising out of or in relation to this Agreement, or the breach or alleged breach thereof, which cannot be settled amicably, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the International Arbitration Association and the provisions of this Section. Any party may initiate arbitration by giving written notice to the other party of an intention to arbitrate and by filing with the Centre for International Commercial Arbitration located in San Francisco, California (or such other Centre location as the parties may agree) three (3) copies of such notice and three (3) copies of this Agreement together with the appropriate filing fee. The arbitration shall be conducted before three (3) arbitrators who shall be appointed in accordance with the said rules. The arbitration proceedings shall be held at the Centre location agreed to by the parties and shall be subject to the above arbitration rules. The arbitrators may grant any legal and/or equitable relief to which a party may be entitled under the law or legal theory under which the party seeks relief, provided, however, that no claim may be made for any special, indirect, consequential, or punitive damages arising out of or related to this Agreement, or any act, omission, or event occurring in connection therewith, except that punitive damages may be awarded for willful or wanton misconduct. The arbitration award shall be given within three (3) months from appointment of the third arbitrator. The award given by the three arbitrators or the majority thereof, shall be final and binding on the parties and shall be subject to no appeal. The award shall not serve as precedent or authority in any subsequent proceeding, provided, however, that if the losing party should fail to comply with the award, the prevailing party may apply to any court having jurisdiction for an order confirming the award in accordance with applicable law. The award can be enforced in any court having jurisdiction. Unless otherwise required by law or court orders, the substance of any arbitration proceedings shall be kept confidential by all parties and by the arbitrators; however, the fact that such a proceeding exists, or that an award has been rendered, need not be kept confidential. The costs of the proceeding, including the fees and costs of attorneys, accountants, and witnesses, and the compensation of the arbitrators, shall be assessed by the arbitrators against the parties according to the arbitrators' determination of fault.

12. Pursuant to Section XVI.F of the Exclusive Distributor Agreement, the parties agreed that their rights and obligations would be governed by California law.

## THE ARBITRATION

13. Pursuant to the foregoing Sales Representative and Exclusive Distributor Agreements, IPAC filed an arbitration demand before AAA on or about May 7, 2018. In the course of the arbitration, IPAC claimed that Black Gold had breached both agreements, breached the duty of good faith and fair dealing, and breached the duty of loyalty. IPAC also pursued claims for tortious interference with contractual relations and trade secret misappropriation.

14. The arbitration was conducted before an arbitrator of the ICDR based in San Francisco, California.  The merits hearing occurred February 4-6, 2019 before the arbitrator in San Francisco.

15. On May 30, 2019, the arbitrator issued the Arbitral Award in IPAC's favor and against Black Gold, in the amount of $1,094,193.58 as follows: $687,702.56 in compensatory damages; $305,138.65 in attorneys' fees and costs; and $101,352.37 as reimbursement for IPAC's payment of administrative fees and expenses and arbitrator compensation.  The arbitrator further awarded injunctive relief in favor of IPAC and against Black Gold.  A true and correct copy of the Arbitral Award is attached as Exhibit 3 of the Joshi Declaration.  All parties were served with the award on May 30, 2019.

## CONFIRMATION OF THE AWARD

16. The Federal Arbitration Act, 9 U.S.C. section 1 *et seq.*, provides for the judicial recognition and enforcement of arbitration mechanisms.  Section 9 provides that, if the parties in their agreement have specified a particular court, at any time within one year after an arbitration award is made, any party to the arbitration may apply to the court specified for an order confirming the award.  If no court is specified in the parties' agreement, then such application may be made to the United States court in and for the district within such award was made.  Section 9 further provides that the court must grant such application unless the award is vacated, modified, or corrected as prescribed in Sections 9.

17. Furthermore, the Sales Representative and Exclusive Distributor Agreements provide that any arbitration award, such as the Arbitral Award, may be enforced in any court having jurisdiction.

18. This Petition to Confirm is made within one year of the date the Arbitral Award was issued.

## PRAYER FOR RELIEF

WHEREFORE, IPAC respectfully requests that the Court issue an order confirming the Arbitral Award and entering judgment in favor of IPAC and against Black Gold for the following:

1   A. Compensatory damages in the amount of $687,702.56, as specifically set forth in the Arbitral Award;

  B. Attorneys' fees and costs in the amount of $305,138.65, as specifically set forth in the Arbitral Award;

  C. Reimbursement for IPAC's payment of administrative fees and expenses and arbitrator compensation in the amount of $101,352.37, as specifically set forth in the Arbitral Award;

  D. Attorneys' fees and costs incurred by IPAC in its continuing efforts to collect on the Arbitral Award and/or the judgment entered by this Court, according to proof, from the date of the award until the total judgment amount is fully paid;

  E. Injunctive relief against Black Gold and any and all persons or entities acting in concert with it or in participation with it or in support of it or in combination with it or in collusion with it or in conspiracy with it, as specifically set forth in the Arbitral Award; and

  F. Any such other and further relief as the Court deems just and proper under the circumstances.

Dated:  May 31, 2019

                */s/ Vinay V. Joshi*
                Vinay V. Joshi
                vjoshi@thepatentattorneys.com
                Anthony S. Kim
                akim@thepatentattorneys.com
                Amin Turocy & Watson LLP
                160 West Santa Clara Street
                Suite 975
                San Jose CA 95113
                Telephone: (650) 618-6481
                Facsimile:  (216) 696-8731

                ***Attorneys for Petitioner***
                ***International Petroleum Products and***
                ***Additives Company, Inc.***