**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **INTERNATIONAL PETROLEUM PRODUCTS AND ADDITIVES COMPANY, INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**BLACK GOLD S.A.R.L.,**<br><br>Defendant. | CASE NO. 19-cv-03004-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 43, 44 |

On May 7, 2018, petitioner International Petroleum Products and Additives Company, Inc. ("IPAC") filed an arbitration demand before the American Arbitration Association ("AAA"), claiming that respondent Black Gold, S.A.R.L. ("Black Gold") and its chief executive officer had breached agreements that were intended to govern Black Gold's role as a sales representative and distributor for IPAC. Following briefing and an arbitration hearing, the arbitrator issued an award in favor of IPAC and ordered Black Gold to pay $1,094,193.58, comprised of $687,702.56 in damages, $305,138.65 in fees and costs, and $101,352.37 in AAA fees and costs.

Thereafter, IPAC filed a motion in this Court, seeking to confirm the arbitration award. Black Gold filed an opposition and countermotion requesting that the Court vacate, or in the alternative, modify and/or correct the arbitration award. The motions were fully briefed. On November 8, 2019, the Court issued an order granting IPAC's motion and denying Black Gold's countermotion. Thereafter, the Court entered a judgment.

Now before the Court is IPAC's motion for attorneys' fees and costs for activities post-dating the arbitration award. Having considered the motion, the opposition thereto, and the record in this action, and for the reasons stated herein, the motion is **GRANTED IN PART AND DENIED IN PART**. The Court shall award IPAC $50,626.00 in attorneys' fees and $21,651.62 in costs, subject to adjustments to be made upon IPAC's filing of a supplemental statement. (See pages 4-5 herein.)

**I. DISCUSSION**

In its motion, IPAC seeks an award of $53,720 in attorneys' fees incurred preparing the petition, motion to confirm the arbitration award, and opposition to Black Gold's motion to vacate that award; $8,500 in attorneys' fees incurred in connection with this motion for fees and costs; and $32,999.78 in total costs incurred post-arbitration. The Court addresses each.

**A. Attorneys' Fees**[1]

The Court applies California's lodestar method to calculate the appropriate attorneys' fees to be awarded in this case. *See Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448–49 (1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation"); *Lealao v. Beneficial California, Inc.,* 82 Cal.App.4th 19, 26 (2000) ("the primary method for establishing the amount of 'reasonable' attorney fees [in fee-shifting cases] is the lodestar method"). Under the lodestar method, the Court "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citation omitted); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") (internal quotation marks and citation omitted)).

*1. Number of Hours Worked*

The party seeking fees has the burden of proving "that the hours requested were reasonable" and providing "a sufficient and proper basis for making that determination." *Rey v.*

---

[1] IPAC bases its request for attorneys' fees and costs on section XVI.E of the Exclusive Distributor Agreement entered into by the parties, which provides that "[t]he costs of the proceeding, including the fees and costs of attorneys, accountants, and witnesses, and the compensation of the arbitrators, shall be assessed by the arbitrators against the parties according to the arbitrators' determination of fault." Black Gold does not contest IPAC's entitlement to fees pursuant to this provision. Further, in the judgment entered November 18, 2019, this Court noted that IPAC was entitled to reasonable attorneys' fees and costs for activities post-dating the arbitration award, including those related to petitioning this Court and briefing the motions filed in this Court. (Dkt. No. 40.) Thus, the issue before the Court on the instant motion is not whether IPAC is entitled to fees and costs, but rather, how much.

2

*Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1244 (2012). In other words, the applicant must justify the claim by submitting evidence supporting the hours worked. *See Van Gerwen v. Guar. Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000). The Court must review time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley v. Eckerhart*, 461 U.S. 424, 433–434 (1983). The Court may adjust these hours down if it believes the documentation to be inadequate. *Id*. at 433. The Court also must assess whether the hours claimed are vague, block-billed, excessive, and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *See Cotton v. City of Eureka, Cal.,* 889 F.Supp.2d 1154, 1176 (N.D. Cal. 2012); *Van Gerwen,* 214 F.3d at 1045.

IPAC requests attorneys' fees for (i) 126.4 hours worked between May 1, 2019 and October 31, 2019 to prepare the petition, motion to confirm the arbitration award, and opposition to Black Gold's motion to vacate that award, and (ii) 20 hours worked between November 1, 2019 and December 9, 2019 to prepare the instant request for attorneys' fees and costs. Black Gold counters that the request should be denied because it is unreasonable and unsupported by the evidence.

<u>May 1, 2019 – October 31, 2019:</u>

The services rendered between May 1 and October 31, 2019 fall into three categories. First, according to the invoices submitted by IPAC, a portion of counsel's time during this period was spent preparing the petition, motion to confirm the arbitration award, and opposition to Black Gold's motion to vacate the award in this case. The invoices contain sufficiently detailed descriptions about the nature of the work performed. IPAC therefore is entitled to recover for these hours expended.

Second, IPAC avers that because Black Gold would not accept informal service of process, IPAC was required to accomplish service of process on Black Gold in Monaco pursuant to the Hague Convention. Doing so purportedly required IPAC to engage a law firm in Monaco to assist with the process and obtain certified translations of the papers for the Hague Service procedure. Because service of process on Black Gold was a necessary step in IPAC pursuing this action, and

Black Gold did not accept informal service of process, IPAC's efforts to serve Black Gold in Monaco are recoverable as time reasonably related to its post-arbitration activities before this Court.

Third, IPAC seeks fees related to "a co-pending proceeding" in Monaco to enforce the arbitration award. IPAC notes that as a result of these proceedings, a Monaco court has issued an order declaring that the arbitration award is enforceable in Monaco and has seized funds from one of Black Gold's bank accounts in Monaco. The Exclusive Distributor Agreement, however, which is the basis for IPAC's fees request, provides only for the recovery of "costs of the proceeding" as "assessed by the arbitrators." Here, the arbitrator did not award fees related to international enforcement in a separate proceeding. Nor has IPAC cited to any cases suggesting that this Court may award fees for work done to enforce the judgment in an entirely separate proceeding before another court. Moreover, IPAC has not provided case-identifying information or copies of relevant filings in the Monaco court from which this Court might be able to determine whether the time spent on these enforcement proceedings falls within the scope of recoverable fees in this case. The arbitrator's decision not to award fees for international enforcement, in conjunction with the lack of authority cited by IPAC which bears the burden, warrants a finding that such fees are not recoverable.

Thus, IPAC is entitled fees time worked between May 1 and October 31, 2019, except for time billed to the separate enforcement proceeding. IPAC's invoices do not, however, itemize the amount of time spent on each task in a single billing entry. At most, the Court observes that 4 of the 44 time entries provided explicitly reference the "enforcement of the arbitration award in Monaco" or the "Monaco proceedings," while several others reference discussions with Monaco counsel. Courts may reduce the time for which fees are sought if block billing, or failing to itemize each task individually in the billing records, makes it impossible to evaluate the reasonableness of the time billed. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Counsel's invoices raise such impossibilities.

Accordingly, a compliance hearing shall be held on the Court's **9:01 a.m.** calendar on **Friday, March 6, 2020**. Five (5) business days prior to the date of the compliance hearing, or by

4

**Friday, February 28, 2020**, IPAC shall file a supplemental statement with details on the number of hours spent working on this proceeding, including service of process, versus the Monaco proceeding. If IPAC fails to timely file a statement, the Court will apply a 20% reduction to the number of hours spent on this case between May 1 and October 31, 2019, permitting IPAC to recover for 101.12 hours worked.

<u>November 1, 2019 – Present:</u>

IPAC also requests $8,500 in attorneys' fees for work performed between November 1, 2019 and the present related to this motion for fees and costs. In support of this request, IPAC's counsel's declaration includes a brief paragraph stating that counsel spent approximately 20 hours on legal research, identification of relevant fees and costs, and preparation of the filings. IPAC does not, however, provide the Court with any billing invoices, presumably because invoice(s) had been generated yet for work performed in November 2019.[2] Although a party may prevail on a motion for attorneys' fees without submitting billing records, the absence of any detailed evidence regarding this time is noteworthy. In light of deficiencies in the evidence, the Court orders that by **February 28, 2020**, IPAC shall file evidence regarding post-November 1, 2019 time worked. Failure to timely submit such evidence will result in the Court applying a 10% reduction to this category of hours worked, allowing IPAC to recover for 18 hours spent on work related to the motion for fees and costs and the bill of costs.

In sum, the Court shall award fees for 119.12 hours worked, subject to adjustment based on any supplemental filing from IPAC.

    *2. Hourly Rate*

Having determined the number of hours reasonably expended by counsel, the Court must next determine the reasonable hourly rate to apply. The party seeking the fee has the burden of producing "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan,* 815 F.2d at 1263. "Affidavits of the

---

[2] Despite noting that it expected to amend its request in its reply brief for fees incurred preparing that brief, IPAC did not do so.

5

plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009).

Here, IPAC argues that the Court should apply the hourly rate of $425 charged by the three attorneys who worked on this matter. In support of its request, IPAC offers a declaration from one of its attorneys, Vinay Joshi, describing the educational and professional experiences of the three attorneys, two whom were partners and one whom was of counsel at the time of the litigation. IPAC also contends that the rates charged are reasonable when compared to the hourly rates set forth in the *Laffey* matrix, which one court in this district has described as a "widely recognized compilation of attorney and paralegal rates based on various levels of experience." *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010).

The Court notes that IPAC has submitted relatively little evidence, namely, a short declaration from one of its attorneys, to demonstrate the reasonableness of the rate charged. From this evidence, however, the Court observes that IPAC's counsel appears to have significant experience, and in the case of one attorney, has billed at a rate higher than that charged to IPAC. Further, although the *Laffey* rates are not determinative of a reasonable hourly rate in the Bay Area legal market,[3] the Court notes that they are, on average, $101 higher than the rates charged by

---

[3] The Ninth Circuit has repeatedly cautioned that "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010); *see also Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, No. 13-72346, 2017 WL 3096105, at *6 (9th Cir. June 27, 2017) ("The Laffey Matrix is not determinative of a reasonable hourly rate for San Francisco-based Loarie's and Seattle-based Brimmer's work on this Ninth Circuit petition for review.") Further, *Theme Promotions*, cited by IPAC, is distinguishable from this case. There, in the context of a complex antitrust action, the court applied the *Laffey* matrix to "reflect the wide range of hourly rates for attorneys who worked on the case, and the range of responsibilities for discovery, trial and appeal among the attorneys over the course of twelve years." 731 F. Supp. 2d at 948. This case arises in an entirely different context.

IPAC's attorneys in this case, lending some context to the reasonableness of counsel's rate. Further, an hourly rate of $425 is below or at the low end of the range routinely accepted by courts in this district. *See, e.g., In re MagSafe Apple Power Adapter Litig.*, No. 5:09-cv-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510[.]"); *Banas v. Volcano Corp.*, 2014 WL 7051682, at *5 (N.D. Cal. 2014) (finding rates ranging from $355 to $1,095 per hour for partners and associates were within the range of prevailing rates).

Based upon the Court's understanding of market rates in the Bay Area for firms of similar size and reputation as counsel's firm, the nature of the case, and comparable rates that the Court has previously approved, the Court is satisfied that counsel's actual rates are reasonable.

In sum, the Court finds that IPAC is entitled to an award of $50,626.00 (119.12 hours x $425 per hour), subject to further adjustments as noted.

**B.    Costs**

Federal Rule of Civil Procedure 54(d)(1) states that "costs—other than attorney's fees—should be allowed to the prevailing party." A prevailing party in an action brought under California law is entitled to recover costs that are "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in amount." Cal. Code Civ. Proc. §§ 1032, 1033.5(c).[4] Reasonable reimbursable litigation expenses may include "those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs." *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018).

IPAC requests $32,999.78 in costs consisting of (i) $6,022.96 for translator Catherine Lewi in connection with translation for service of process in Monaco and for enforcement proceedings there; (ii) $400 for filing fees in this Court; (iii) $89.51 to send Apostille documents to Monaco for enforcement proceedings there; (iv) $450 for an Apostille service in connection with enforcement proceedings there; (v) $990.80 paid to Inservio3 LLC to prepare chambers copies of briefs filed in

---

[4] Neither party disputes that California law applies.

this case; and (vi) $22,978.45€($25,046.51) paid to the Zabaldano law firm for services rendered in connection with service of process in Monaco and for enforcement proceedings there, with 14,528.46€($15,836.02) related to service and $8,449.99€($9,210.49) related to enforcement proceedings.

For the reasons discussed, IPAC generally is entitled to reasonable costs related to litigating in this Court and effectuating service on Black Gold in Monaco, but is not entitled to costs related to the enforcement proceeding in Monaco. Thus, IPAC may recover for the $400 filing fee. With respect to the $990.80 spent preparing chambers copies of briefs, the Court agrees with Black Gold that this amount is excessive because IPAC unnecessarily submitted to the Court copies of all cases cited in their briefs. As such, **by February 28, 2020**, IPAC shall provide the Court with evidence regarding the amount of costs attributable to preparing the binder of case authorities. Failure to provide such evidence will result in the Court applying a 20% reduction to the amount awarded, totaling $792.64.

With respect to the $15,836.02 paid to Zabaldano for serving papers in Monaco, the Court observes that the billing records submitted do not detail how much time was spent on the various tasks listed. Moreover, the Court finds the amount requested to be excessive considering the only task being completed was effectuating service on Black Gold. Thus, the Court orders that IPAC shall, in any additional statement filed by **February 28, 2020**, provide the Court with additional details regarding these costs. Failure to provide sufficient detail will result in the Court applying a 35% reduction the amount sought, resulting in $10,293.41.

Because IPAC is not entitled to recover for costs related to enforcement proceedings in Monaco, the Court declines to award any of the $89.51 paid to send Aposille documents to Monaco, $450 paid for Apostille service, and $9,210.49 paid to Zabaldano for enforcement proceedings.

Finally, with respect to the $6,022.96 paid to the translator, IPAC is entitled to only that portion related to service of process. *See Law Office G.A. Lambert & Assocs. v. Davidoff*, 72 F. Supp. 3d 110, 120 (D.C. D. 2014) ("The Court also concludes that the cost of translating the complaint and summonses into German—required to effect service in Germany pursuant to the

Hague Convention for Service Abroad in Civil and Commercial matters—is also taxable in these circumstances."). Although Ms. Lewi's invoices are not clearly itemized, IPAC's counsel's declaration in support of its bill of costs states that $4,622.96 of translation costs were incurred in connection with service, while $1,400 was incurred in connection with enforcement. IPAC is entitled to recover for the former but not the latter.

As such, the Court will award IPAC $16,109.01 in costs ($400 + $792.64 + $10,293.41 + $4,622.96), subject to adjustment based on evidence provided in any supplemental statement filed by IPAC.[5]

## II. CONCLUSION

For the reasons stated above, a compliance hearing shall be held on the Court's **9:01 a.m.** calendar on **Friday, March 6, 2020**, in Courtroom 1 of the United States Courthouse located at 1301 Clay Street in Oakland, California. Five (5) business days prior to the date of the compliance hearing, or by **Friday, February 28, 2020**, IPAC shall file a supplemental statement with details on the following: (a) the number of hours worked on this proceeding versus the Monaco proceeding; (b) the number of hours worked after November 1, 2019; and (c) the amount of costs attributable to preparing a binder of case authorities. If IPAC fails to timely file a statement, the Court will apply the reductions set forth above, pursuant to which Black Gold would pay IPAC a total of $66,735.01, comprised of $50,626.00 in attorneys' fees and $16,109.01 in costs.

This Order terminates Docket Numbers 43 and 44.

**IT IS SO ORDERED.**

Dated: February 18, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] In its motion, IPAC noted that certain of the costs sought also were claimed in its bill of costs (Dkt. No. 43). While the instant motion was pending, the Clerk entered a taxation of costs (Dkt. No. 51.), which IPAC subsequently challenged (Dkt. No. 52). Because this Order addresses the costs sought in the bill of costs, and in order to avoid duplication, the Court **ORDERS** that IPAC shall not be awarded any of the costs set forth in the taxation of costs. Further, IPAC's motion for review of the taxation of costs is **TERMINATED** as moot.