# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# EUREKA DIVISION

| | |
|---|---|
| INTERNATIONAL PETROLEUM PRODUCTS AND ADDITIVES COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> BLACK GOLD S.A.R.L., <br><br> Defendant. | Case No. 19-cv-03004-YGR   (RMI) <br><br> **ORDER ON MOTION FOR SANCTIONS** <br> Re: Dkt. No. 90 |

Now pending before the court is a Motion for Monetary Sanctions filed by Petitioner International Petroleum Products and Additives Company, Inc. ("IPAC") (dkt. 90), to which Respondent Black Gold S.A.R.L. ("Black Gold") has responded (dkt. 92), and IPAC has replied (dkt. 95). The matter came on for oral argument before the undersigned on July 28, 2020. Min. Entry (dkt. 101). For the reasons described below, IPAC's Motion is granted in part and denied in part.

## FACTUAL BACKGROUND

This Motion arises out of an action for court confirmation of IPAC's arbitration award against Black Gold. *See* Pet'r's Mot. (dkt. 90) at 3. After granting IPAC's Motion to confirm the arbitration award, Judge Gonzalez Rogers issued a judgment by a separate Order on November 18, 2019, confirming IPAC's arbitration award of $1,094,193.58. *See generally* Order of November 8, 2019 (dkt. 38); Judgment (dkt. 40). Since Black Gold did not pay the judgment, IPAC then filed an *Ex Parte* Motion for Judgment Debtor Examination (dkt. 55), which Judge Gonzalez Rogers referred to the undersigned (dkt. 57), and served Black Gold with certain discovery requests.

While IPAC's February 10, 2020 discovery requests were still pending, Judge Gonzalez Rogers awarded IPAC attorneys' fees and costs incurred after the arbitration award. *See* Order of February 18, 2020 (dkt. 54). On March 6, 2020, the undersigned granted the *Ex Parte* Motion. *See* Order of March 6, 2020 (dkt. 59).

*The Discovery Request, Discovery Dispute, and Relevant Orders:*

On February 10, 2020, IPAC served 11 Interrogatories, 30 Requests for Production, and 32 Requests for Admission that sought information on Black Gold's assets related to its ability to satisfy the judgment. *Id.* The discovery served on Black Gold was limited to:

1. IPAC's First Set of Interrogatories (Nos. 1-11) ("ROGs");
2. IPAC's First Set of Requests for Production of Documents (Nos. 1-30) ("RFPs"); and
3. IPAC's First Set of Requests for Admission (Nos. 1-32) ("RFAs").

Black Gold served its objections and responses to the discovery on March 11, 2020. *See See* Exh. 1 to Joshi Decl. (dkt. 90-2) at 1. Instead of responding to the interrogatories substantively, Black Gold asserted several meritless objections, including the objection that Rule 69 of the Federal Rules of Civil Procedure did not apply to foreign parties; that the term "hold assets" was ambiguous and undefined; and that certain interrogatories constituted more than 25 separate requests. *Id.* at 4, 5.

On April 7, 2020, IPAC sent a discovery letter to Black Gold setting forth the numerous deficiencies in Black Gold's responses and requesting to meet and confer. *See* Joshi Decl. (dkt. 90-1) at 2. On April 14, 2020, Mr. O'Neill, a partner at Benjamin, Heather, Iaciofano & Bitter, LLC ("BHIB") – the firm that had represented Black Gold since the inception of the arbitration proceedings – replied to IPAC's letter explaining that he would be taking over the representation of Black Gold since previous counsel had left BHIB. *Id*. Mr. O'Neill also requested an "informal extension of 20 days" to familiarize himself with the case and respond to the issues raised in IPAC's April 7, 2020 discovery letter to Black Gold. Exh. 2 to Joshi Decl. (dkt. 90-3) at 1.

On April 21, 2020, the undersigned held a hearing on Black Gold's Motion to Quash the Order (dkt. 59) directing certain persons to appear for a judgment debtor examination. *See generally* Order of April 23, 2020 (dkt. 72). The undersigned denied Black Gold's Motion, noting

"the arguments in support of canceling the hearing and urging vacatur of the court's previous order are meritless and warrant no discussion." *See id.* at 1.[1] In addition, the undersigned denied IPAC's request for attorneys' fees incurred in opposing the Motion to Quash. *Id.*

On April 24, 2020, in light of the undersigned's Order finding Black Gold's similar arguments in support of the Motion to Quash meritless, IPAC asked Mr. O'Neill to withdraw Black Gold's discovery objections and provide substantive responses to IPAC's requests by May 4, 2020. Exh. 3 to Joshi Decl. (dkt. 90-4) at 2-5. On May 4, 2020, Mr. O'Neill replied stating that he could not respond to IPAC's discovery letter since his *Pro Hac Vice* application was still pending. *See* Exh. 4 to Joshi Decl. (dkt. 90-5). On May 8, 2020, two days after his application was granted, Mr. O'Neill responded to IPAC's April 7, 2020 discovery letter but did not agree to supplement any responses or produce any documents. *See* Exh. 5 to Joshi Decl. (dkt. 90-6). Furthermore, on May 13, 2020, during a telephonic meet and confer, Black Gold stated that it was not withdrawing any objections, and did not offer to provide any supplemental responses. *Id.* Instead, Black Gold suggested that IPAC re-issue its discovery requests in accordance with Black Gold's objections. *Id.*

At that point, the parties had reached an impasse that could not be resolved without court assistance, and on May 21, 2020, the parties filed a Joint Discovery Letter regarding Black Gold's objections to IPAC's discovery requests. *See generally* Joint Discovery Letter (dkt. 83) ("the Letter"). In the Letter, Black Gold defended its aforementioned objections, including its objections to the use of "vague" terms and the extraterritorial application of Rule 69, reasoning that "[t]he materials and information that IPAC seeks are in Europe and other places than the United States." *Id.* at 5.

Judge Gonzalez Rogers referred the matter to the undersigned, who ordered the parties to hold a further meet and confer prior to a June 5, 2020 discovery hearing. *Id.* About 90 minutes prior to a meet and confer call, on June 4, 2020, Mr. O'Neill emailed IPAC and offered to produce

---

[1] In its Motion to Quash, Black Gold asserted, among other arguments, that "Rule 69 cannot be applied extraterritorially, the doctrine of abstention and comity also require this Court to quash the Order to Appear in deference to the pending action in the Principality of Monaco." Mot. to Quash (dkt. 63) at 2, 12-16.

3

discovery if IPAC were "to attempt to obtain information from Black Gold reasonably related to the claims in the complaint from the date of judgment/arbitration award." Exh. 6 to Joshi Decl. (dkt. 90-7) at 2. Otherwise, Mr. O'Neill requested to know the significance of the date range in the discovery request. *Id.* During the meet and confer call, Black Gold confirmed its objection to the date range encompassed by certain date-limited discovery requests, and the parties sent a letter to this court indicating that Black Gold and IPAC had purportedly narrowed their dispute to the time-period of the discovery requests – specifically, whether any date-limited discovery requests from IPAC should start from January 1, 2016, the date of the agreements that led to the arbitration award, or from May 29, 2019, the date of the arbitration award. *See* Joint Notice of Compliance (dkt. 87) at 2. During the telephonic hearing before the undersigned on June 5, 2020, however, Mr. O'Neill stated that Black Gold never said it was dropping any of its initial objections, contrary to the parties' Joint Notice of Compliance. *See id;* Pet'r's Mot. (dkt. 90) at 6. In that hearing, and for the first time, Black Gold generally asserted that COVID-19 delayed its production. Min. Entry (dkt. 101).

Ultimately, the undersigned ruled in IPAC's favor overruling all of Black Gold's objections as meritless. *See* Order of June 9, 2020 (dkt. 89). Black Gold was ordered to provide substantive responses to each Interrogatory, produce responsive documents to each RFP, and provide a substantive response to RFA Nos. 31 and 32 on a rolling basis beginning on June 10, 2020, and ending no later than July 20, 2020. *Id.* at 2. The same Order authorized IPAC to file the pending Motion under Rule 37 of the Federal Rules of Civil Procedure. *Id.*[2]

*Petitioner's Motion for Sanctions, Response, Reply, and Developments*:

On May 5, 2020, IPAC moved for sanctions pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, seeking $17,000 for the fees and costs it incurred in obtaining the

---

[2] Since briefing completed for the pending Motion, two developments have occurred, neither of which impact the pending Motion for Sanctions. Min. Entry (dkt. 101). First, as of the date of the July 28, 2020 hearing regarding the pending Motion, this court has not been able to effectuate Black Gold's compliance with the June 9, 2020 Order compelling discovery; the July 20, 2020 deadline imposed by the undersigned passed with "a small amount of meaningless document production . . ." and still no response to "any. . . interrogatories," to quote counsel for IPAC during the July 28, 2020 hearing. Min. Entry (dkt. 101). Second, two business days before the July 20, 2020 deadline, Black Gold's counsel filed a Motion to Withdraw as Attorney Without Substitution. *Id.*

4

favorable ruling in the June 9, 2020 Order overruling all of Black Gold's objections to IPAC's discovery requests. Pet'r's Mot. (dkt. 90) at 7. Additionally, IPAC requests that an award of fees and costs be levied against Black Gold and its counsel jointly and severally. *Id*. IPAC's Motion includes a declaration by counsel, multiple exhibits reflecting hours worked and invoices to IPAC for the period of March 2020 through May 2020, as well as a United States Attorney's Office ("USAO") fee matrix showing hourly rates for attorneys at various levels for 2015-2020.[3] *See* Joshi Decl. (dkt. 90-1); Exhs. 7-9 (dkts. 90-8, 90-9, 90-10) at 2-14.

Three attorneys, Mr. Ting, Mr. Oliver, and Mr. Joshi, worked on the discovery requests and resulting dispute on behalf of IPAC. *See* Joshi Decl. (dkt. 90-1). Each attorney has more than a decade of experience – Mr. Ting was admitted to practice in 2006 and Messrs. Oliver and Joshi were admitted to practice in 2001. *Id.* at 4-6. Both Mr. Ting and Mr. Joshi's regular billing rate is $425 per hour. *Id.* Mr. Oliver's regular billing rate is $500 per hour, but he reduced his rate to $425 per hour for this judgment enforcement action. *Id.* at 4-6. The spreadsheet summarizing hours expended by all three attorneys reflects a total of 40 hours worked, which, multiplied by the $425 per hour rate, amounts to a total of $17,000 in attorneys' fees. *See* Exh. 7 to Joshi Decl. (dkt. 90-8) at 2.

Petitioner's pending Motion is based on the contention that Black Gold lacked a legitimate justification for its failure to respond to the discovery requests. *See generally* Pet'r's Mot. (dkt. 90). In addition, IPAC cites three reasons for its request that Black Gold and its counsel be held jointly and severally liable for the fees that it incurred, including that: (1) Black Gold had no intention of voluntarily cooperating; (2) Rule 37 of the Federal Rules of Civil Procedure authorizes sanctions to be made against the party or attorney advising the party's conduct, or both; and (3) the meritless objections made by Black Gold appear to "primarily be the concoction of counsel, not the client." *Id.* at 9-10. Finally, IPAC argues that the requested fees and costs in the amount of $17,000 are reasonable, and are based on the hourly rate of IPAC's counsel multiplied

---

[3] The USAO fee matrix lists $433 per hour as the rate for an attorney with 8-10 years of experience, $510 for 11-15 years of experience, and $566 for 16-20 years of experience. Exh. 9 to Joshi Decl. (dkt. 90-10) at 2.

by the hours devoted to responding to Black Gold's meritless objections. *Id.* at 10.[4]

By way of response, Black Gold requests that IPAC's request for attorneys' fees be denied. Black Gold contends that its objections were substantially justified in light of IPAC's "burdensome" requests. Resp't Opp. (dkt. 92) at 2. Black Gold also cites its diverse business interests with customers spanning multiple continents in defense of its objections, as well as the COVID-19 crisis. *Id.* at 2-3. Black Gold explains that, despite COVID-19 related delays, it submitted revised responses to the RFAs and RFPs and produced responsive documents on June 11, 2020, and that in light of COVID-19 and its production of documents, sanctions would not be in the interest of justice. *Id.* at 3.

Black Gold also argues that its attorneys should not be held jointly and severally liable for any sanctions award because "IPAC is not seeking sanctions against Black Gold and its counsel for bringing the Motion to Quash, it seeks sanctions for Black Gold's failure to satisfy the judgment," and further explains that "sanctions are imposed only in the context of discovery, and not as requested by IPAC in this instance, as directed to Black Gold's counsel, for any failure to satisfy the judgment." *Id.* at 3-4. Regarding the reasonableness of the requested attorneys' fees, Black Gold suggests that the requested amount should be reduced by 21.25 hours for three reasons: (1) the use of three attorneys to litigate IPAC's Motion to Compel is excessive; (2) Mr. Ting's time reflects "excessive, undocumented and duplicative tasks;" and (3) that the fee motion reflects various block billing. *Id.* at 4-5.

By way of reply, IPAC contends that Black Gold's excuses for discovery misconduct are indefensible, pointing out that Black Gold "simply re-argues a subset of objections that have already been overruled by the Court," and that there is no relation between COVID-19 and the assertion of meritless objections. Pet'r's Reply Br. (dkt. 95) at 2-3. Second, IPAC reasserts its request that Respondent's counsel be held jointly and severally liable, and clarifies that it was indeed Black Gold's and counsel's behavior with respect to the *discovery* requests that led to the pending Motion for Sanctions. *Id.* at 3. After summarizing Black Gold's "kitchen sink" approach

---

[4] Petitioner requests an additional $1,955, which reflects 4.6 hours spent on the Reply at the hourly rate of $425, for a total of $18,955. *See* Pet'r's Reply Br. (dkt. 95) at 2.

to evading IPAC's collection efforts, IPAC contends that holding Black Gold and its counsel jointly and severally liable for the sanctions award is "necessary" to compel discovery. *Id.* at 5.

Finally, with respect to Black Gold's argument that the requested fees should be reduced, IPAC suggests that this court has "previously reviewed billing rates and billings of IPAC's counsel and found them to be reasonable" (*see* dkt. 54), explains that Mr. Ting is not a junior but rather a senior attorney with years of experience in patent litigation, and notes that what could be construed as duplicative work accurately reflects the division of labor that was required to handle correspondence between the parties, joint-calls, and time spent researching and responding to each objection carefully. *Id.* All of this time, they contend, could have been avoided had Black Gold not raised the long list of non-meritorious objections in the first place. *Id.* at 6.

## **DISCUSSION**

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure governs the payment of expenses when motions to compel discovery are granted. The award is mandatory unless the court finds that any of the following apply: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). The party facing sanctions has the burden to establish substantial justification or that other circumstances make the sanctions award unjust. *Subramani v. Wells Fargo Bank, N.A.*, No. 13-cv-01605-SC, 2015 WL 12964616, at *1 (N.D. Cal. Mar. 18, 2015) (applying the burden found in *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) to Rule 37(a) because the language is identical to Rule 37(d)); *see also Brewer v. Leprino Foods Co., Inc.*, No. 1:16-cv-1091-SMM, 2019 WL 356657, at *6 (E.D. Cal. Jan. 29, 2019). The Supreme Court has stated that, in the context of Rule 37, "substantially justified" does not mean "'justified to a high degree,' but rather. . . [that] there is a 'genuine dispute,' or '[that] reasonable people could differ as to [the appropriateness of the contested action].'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (internal citations omitted).

Here, it is not the case that IPAC filed the Motion before attempting in good faith to obtain the disclosure or discovery without court action. In its effort to identify potential Black Gold

assets that might be available to satisfy the judgment, IPAC served 11 interrogatories, 30 RFPs, and 32 RFAs on Black Gold specifically tailored to identify those potential assets. *See* Joint Discovery Letter (dkt. 83) at 3. Despite this careful tailoring of requests, IPAC engaged in hours of good faith meet and confer efforts with Black Gold by phone and in writing. From early February through early May, IPAC granted Black Gold multiple extensions and also tried, via a meet and confer on May 13, 2020, to resolve the discovery dispute without court assistance. *See generally* Joshi Decl. (dkt. 90-1). Despite IPAC's continued efforts, Black Gold did not withdraw any of its objections, and instead repeatedly relied on them. As of the writing of the May 21, 2020 Joint Discovery Letter, Black Gold had not produced a single substantive response to any of the interrogatories, produced a single document in response to the RFPs, or admit or deny the RFAs. *Id.* Thus, IPAC sufficiently demonstrated an attempt to obtain the discovery in good faith without court action in the face of continued obstinance on the part of Black Gold.

In addition, Black Gold provides no authority that would allow the undersigned to find that its objections were substantially justified. The undersigned did not expressly address each of the objections raised in the May 21, 2020 Joint Discovery Letter individually due to their utter lack of merit. However, for the purposes of this Motion, the court will briefly explain its reasoning to show why Black Gold's objections lacked substantial justification and thus, why an award of attorney fees is appropriate under Rule 37.

IPAC filed an *Ex Parte* Motion for Judgment Debtor Examination (dkt. 55) and sought discovery pursuant to Rule 69 of the Federal Rules of Civil Procedure and under California law. Under Rule 69(a)(2), a judgment creditor may obtain discovery as provided either by the procedure of the state where the court is located or by the Federal Rules of Civil Procedure. Thus, Black Gold's challenge to whether Lorenzo and Sofia Napoleoni, both of whom are citizens of Italy and residents of Monaco, could be subjected to discovery requests was a challenge to whether the Federal Rules of Civil Procedure can reach foreign nationals. Of course, they can.[5]

---

[5] *See e.g. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987). Furthermore, in the context of Rule 69, where the judgment creditor seeks to proceed under the Federal Rules, courts have held that even discovery of the assets of foreign countries is permissible, *see Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 142 (2014) ("[t]here is no [ ] provision

1      Thus, Black Gold's objections on this basis were without merit. Black Gold's objections on the

2      basis of relevance, vagueness, and overbreadth were impermissible boilerplate and not specific.

3      *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections should be plain enough and

4      specific enough so that the court can understand in what way the interrogatories are alleged to be

5      objectionable). Black Gold offered no rational basis for its propositions that the terms used, such

6      as "all" and "your," which are easily understood and common terms, are somehow vague, or that

7      the requests were irrelevant or overbroad. Additionally, Black Gold's objections that the discovery

8      requests should be limited in time from the arbitration award, rather than the date of the

9      agreements that led to the arbitration award, stretches credulity. IPAC reasonably limited certain

10     requests to the effective date of the underlying agreements, and the attempt to limit discovery to

11     the time from the arbitration award had no basis in law or logic. This is especially true given the

12     broad and permissible nature of discovery under Rule 69. *See e.g. Ryan Inv. Corp. v. Pedregal de

13     Cabo San Lucas*, No. 06-cv-3219-JWRS, 2009 WL 5114077, at *4 (N.D. Cal. Dec. 18, 2009) (a

14     judgment creditor is "'*entitled* to fish for assets of the judgment debtor.'") (quoting *Banco Cent.

15     De Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01-cv-9649-JFK, 2006 WL 3456521,

16     at *9 (S.D.N.Y. Nov. 30, 2006) (emphasis added)). Finally, as to the objection to the number of

17     interrogatories with multiple subparts, "interrogatory subparts are to be counted as one

18     interrogatory . . . if they are logically or factually subsumed within and necessarily related to the

19     primary question." *Safeco Of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *see

20     also, Synopsys, Inc. v. ATopTech, Inc*, 319 F.R.D. 293, 294-95 (N.D. Cal. 2016). While Rule 33

21     does not allow parties to "evade [the] presumptive limitation [of 25 written interrogatories]

---

forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets."), and that a foreign-based defendant can be made to appear in the United States for depositions, *see Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-06370-EJD-VKD, 2020 WL 418960, at *2 (N.D. Cal. Jan. 27, 2020) (denying a request to order a foreign-based defendant to appear for an examination where creditor elected to proceed with the judgment execution procedures available under California law, but was permitted to conduct alternative discovery and require an examination in San Jose under the Federal Rules, given the permissive language of Rule 69(a)(2)), and despite possible foreign law prohibitions, *see Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427 (N.D. Cal. 2008) (ordering depositions in the United States because Brazilian law prohibited U.S. lawyers from taking depositions there and defendants often hosted Brazilian employees in the United States).

9

through the device of joining as 'subparts' questions that seek information about discrete separate subjects" (*see* Advisory Committee Note to 1993 Amendment to Fed. R. Civ. P. 33, 146 F.R.D. 675, 672-73), there is no question that the interrogatories here each sought information related to the same subjects such that they "should be counted as one interrogatory. . . ."[6] *Synopsys,* 319 F.R.D. at 295. And, Black Gold made no rational or reasonable argument to the contrary.

Similarly, Black Gold's Response to the Motion for Sanctions lacks merit. Black Gold inexplicably spends much time arguing that sanctions are not appropriate because IPAC is seeking sanctions for Black Gold's failure to pay the judgment. This is not so. IPAC specifically moves for sanctions under Rule 37 for Black Gold's discovery conduct, which led to the May 21, 2020 Joint Discovery Letter. *See* Pet'r's Mot. (dkt. 90) at 2 ("[Petitioner] moves this Court pursuant to Fed. R. Civ. Proc. 37. L.R. 37-4. . . for its reasonable attorney fees and costs as a result of Respondent and Judgment Debtor Black Gold, S.A.R.L.'s discovery misconduct."). This type of argument evidences Black Gold's reliance on non-meritorious arguments throughout these proceedings and, in part, informs the undersigned's decision to impose sanctions on counsel as well as Black Gold, and provides the basis for this court's decision to award fees for the drafting of the Reply. In addition, Black Gold's argument regarding the COVID-19 pandemic is unavailing. While the COVID-19 pandemic may be an acceptable excuse for the delay of discovery responses, it does not explain the meritless objections that were asserted. Accordingly, the undersigned finds that Black Gold failed to meet its burden to establish a substantial justification for its discovery responses and objections, or to establish that other circumstances make the sanctions award unjust, and sanctions under Rule 37 are warranted.

Pursuant to Rule 37, the court has wide discretion to determine the amount of fees levied on a party or a party's attorney advising the conduct, or both. The undersigned finds that the facts of this case require holding both Black Gold and its attorneys jointly and severally liable. Even if the objections were client-ordered, the attorneys had an obligation to tell their client that they

---

[6] For example, Interrogatory No. 3 requests that Black Gold "[i]dentify all transfers of money or other property from You to any other entity made for the benefit of any shareholder that holds an interest in You (including, without limitation, Sofia Napoleoni and/or Lorenzo Napoleoni), including the amount of each transfer, the date of each transfer, the recipient of each transfer, and the reason for each transfer."

would not repeatedly assert meritless arguments to delay discovery. As a result of the conduct of Black Gold and its counsel, IPAC incurred fees in compelling discovery that it should not have had to incur. Thus, the undersigned finds it appropriate to levy the sanction on both counsel and client.

Finally, as to Black Gold's arguments that any award of fees should be reduced in order to be reasonable, here the undersigned agrees with Respondents. Ironically, due to the non-meritorious nature of the objections, the undersigned finds that the amount of time Petitioner spent researching and responding to the objections to be excessive. Indeed, the briefing in this matter was not an exhaustive treatise (although, in fairness, due to the frivolous nature of some of the objections, there was not a lot to discuss). Petitioner claims 40 hours is appropriate, while Black Gold suggests 18.75 hours is appropriate. Based on the limited briefing, and the court's own time spent on these issues, the court finds a total of 30 hours to be reasonable. The undersigned also finds the 4.6 hours spent on the Reply to be reasonable. Additionally, because Judge Gonzalez Rogers previously found IPAC's counsels' billing rate of $425 per hour to be reasonable (dkt. 54), the undersigned finds the same.

Therefore, the final award amount is calculated at $14,705, which represents 30 hours at $425 per hour for the discovery dispute and this Motion, plus an additional 4.6 hours at $425 per hour for the Reply.

**CONCLUSION**

For the reasons stated above, IPAC's request for an award of fees and costs in connection with the discovery dispute is **GRANTED in part** and **DENIED in part**. Respondent Black Gold and counsel, jointly and severally, are **ORDERED** to pay IPAC's sanctions award in the amount of $14,705 within three weeks of the date of this order.

**IT IS SO ORDERED.**

Dated: August 12, 2020

ROBERT M. ILLMAN
United States Magistrate Judge

11